IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


OREGON COAST SCENIC RAILROAD
LLC, an Oregon nonprofit corporation,
                        No. 3:14-cv-00414-HZ

          Plaintiff,                  OPINION & ORDER

     v.

STATE OF OREGON, DEPARTMENT OF
STATE LANDS, and MARY M. ABRAMS,
Director of Dept. of State Lands, in her
official capacity,

          Defendants.


Martin E. Hansen
Francis Hansen & Martin LLP
1148 NW Hill Street
Bend, OR 97701

      Attorney for Plaintiff

Darsee Staley
Sarah K. Weston
Oregon Department of Justice
1515 SW Fifth Avenue, Suite 410
Portland, OR 97201

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

Plaintiff Oregon Coast Scenic Railroad (OCSR) filed this declaratory action seeking relief from a cease and desist order issued by Defendants, the State of Oregon's Department of State Lands and its Director, Mary Abrams (collectively "the State"), for violation of the State's removal-fill law. OCSR claims that its railroad track repair work is under the exclusive jurisdiction of the Surface Transportation Board, a federal agency, and thus the State's removal-fill law is preempted. OCSR additionally claims that enforcement of the removal-fill law violates the Commerce Clause.

OCSR moved for a preliminary injunction and a hearing was held on April 9, 2014. Before the court are OCSR's motion for preliminary injunction [8] and the State's motion to consolidate the preliminary injunction hearing with a trial on the merits [18]. Because I find that OCSR has no likelihood of success on the merits on its claims, the motion for preliminary injunction [8] is denied. The parties had the opportunity to fully present their arguments regarding the legal question of federal preemption and no genuine issues of material fact remain. The State's motion to consolidate the preliminary injunction hearing with a trial on the merits [18] is granted. OCSR's requests for declaratory relief and a permanent injunction are denied and all claims are dismissed.

## BACKGROUND

Plaintiff OCSR is a nonprofit organization that operates a tourism-related train along the Oregon coast. Wickert Decl. [10] Ex. 1 at 1. In March 2012, OCSR signed a lease with the Port of Tillamook Bay for the right to use the Port's rail line from Enright, Oregon at mile post 810.5 to Industrial Park Yard in Tillamook, Oregon at mile post 859.13. Id. at 2. The lease limits

OCSR to "tourism-related train operations[.]"  Id. at 3.  OCSR has the right to operate its own

tourist trains or "allow other tourist rail operators" to operate trains on the rail line.  Id. at 10.

For the first five years of the lease, the funds that OCSR would otherwise pay to the Port

to lease the rail line are to be used by OCSR to repair the rail line.  Id. at 2.  The Port's "rail

connection to a mainline carrier" was severed in 2007 due to storm damage.  Id. at 7.  No freight

traffic runs on the portion of rail line leased by OCSR.  Id. at 1, 7.  The lease would be modified

should the Port's connection to a mainline carrier be re-established and freight traffic resumes.

Id. at 7.

OCSR began repairing the rail line near Salmonberry, Oregon earlier this year.  Wickert

Decl. [10] ¶ 5.  On March 11, 2014, the State sent OCSR a cease and desist order for its repair

activities near Salmonberry.  Id. Ex. 2 at 1.  The State notified OCSR that for the work near the

Salmonberry River, "[r]emoval of any amount of material within waters designated Essential

Salmonid Habitat" required a permit.  Id.  The State also disagreed with OCSR's assertions that

the Surface Transportation Board (STB), as authorized by the Interstate Commerce Commission

Termination Act (ICCTA), 49 U.S.C. §§ 10101 et seq., had exclusive jurisdiction over OCSR's

repair work, and that the State's removal-fill law was therefore preempted by ICCTA.  Id.

DISCUSSION

OCSR alleges three claims:  (1) ICCTA preempts the State's removal-fill law, (2)

enforcement of the State's removal-fill law violates the Commerce Clause, and (3) enforcement

of the State's removal-fill law imposes a burden on interstate commerce in violation of the

Commerce Clause, thereby violating OCSR's rights under 42 U.S.C. § 1983.  Compl. 4-6.

OCSR seeks declaratory and injunctive relief.  Id. at 7.

/ / /

I.    Preliminary Injunction

    A.    Standard

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The movant "must establish that irreparable harm is likely, not just possible." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). The movant must also carry its burden of persuasion by a "clear showing" of the four required elements set forth above. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam); Lopez v. Brewer, 680 F.3d 1068, 1072 (9th Cir. 2012).

The court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Alliance for the Wild Rockies, 632 F.3d at 1131. Thus, a party seeking an injunction may show greater irreparable harm as the probability of success on the merits decreases. Id. "To reach this sliding scale analysis, however, a moving party must, at an irreducible minimum, demonstrate some chance of success on the merits." Global Horizons, Inc. v. United States DOL, 510 F.3d 1054, 1058 (9th Cir. 2007) (quotation omitted). If the movant fails to show that he has some chance on the merits, that ends the matter. Developmental Servs. Network v. Douglas, 666 F.3d 540, 544 (9th Cir. 2011).

    B.    Analysis

"Once a court determines a complete lack of probability of success, its analysis may end, and no further findings are necessary." Global Horizons, 510 F.3d at 1058. That is the case here.

The ICCTA granted the STB jurisdiction over "transportation by rail carrier" if the transportation is "part of the interstate rail network[.]" 49 U.S.C. § 10501(a).

> (1) [T]he Board has jurisdiction over *transportation by rail carrier* that is--
>     (A) only by railroad; or
>     (B) by railroad and water, when the transportation is under common control, management, or arrangement for a continuous carriage or shipment.
>
> (2) Jurisdiction under paragraph (1) *applies only to transportation in the United States between a place in--*
>     (A) *a State and a place in the same or another State as part of the interstate rail network*;...."

Id. (emphasis added). Thus, in order for the STB to exercise jurisdiction over "transportation by rail carrier," as relevant here, the transportation offered by OCSR must be "part of the interstate rail network." Id.

Although the ICCTA does not define "interstate rail network," the STB has interpreted the phrase to include facilities or services "that are part of the general system of rail transportation and are *related to the movement of passengers or freight in interstate commerce*." DesertXpress Enter., LLC, No. FD 34914, 2010 STB LEXIS 183, at *27 (STB May 7, 2010) (emphasis added). If "however, an activity, even though it is on rail property, is not considered 'transportation by a rail carrier' under § 10501(a), no federal preemption applies, and states and localities are free to regulate the activity." Borough of Riverdale, No. FD 35299, 2010 STB LEXIS 340, at *3 (STB Aug. 5, 2010). Therefore, to fall under the STB's jurisdiction, moving passengers or freight in interstate commerce is requisite for being considered "transportation by a rail carrier."

In addition to the express language of § 10501(a), the history of the ICCTA shows Congress' intent to allow jurisdiction only if interstate commerce is implicated. Prior to the ICCTA, the Interstate Commerce Commission (ICC), the predecessor to the STB, did not have

jurisdiction over transportation wholly within a state.  DesertXpress, 2010 STB LEXIS 183, at

*20.  Congress enacted the ICCTA to include jurisdiction over intrastate transportation, but

likely added the phrase "as part of the interstate rail network" to § 10501(a) "to avoid

constitutional infirmity[.]"  Id. at *23.  Restricting the jurisdiction to transportation "as part of

the interstate rail network" ensured that the intrastate transportation was sufficiently related to

interstate commerce.  Id.

Earlier decisions by the ICC also emphasize the need for an intrastate operator to have

some relation to interstate commerce for jurisdiction to exist.  See Napa Valley Wine Train, Inc.,

No. FD 31156, 1991 ICC LEXIS 195, at *12 (Jul. 18, 1991) ("[W]e may have jurisdiction over

intrastate operations by interstate carriers when those operations are sufficiently linked to, and

part of, the interstate system to be deemed 'interstate commerce' within the meaning of the

commerce and supremacy clauses."); Magner O. S. Railway v. Interstate Commerce Com., 692

F.2d 441, 444-45 (6th Cir. 1982) (no ICC jurisdiction over intrastate scenic railway because of

lack of connector to common carrier, even though tracks were owned by interstate freight

carriers).

Even after the ICCTA took effect, the STB relied on the ICC decisions in Napa and

Magner to determine whether it had jurisdiction over an operator of a wholly intrastate tourist

service.

> [T]he ICC has determined that it had jurisdiction over a railroad lying wholly
> within one state *if the railroad participates in the movement of passengers from
> one state to another under common arrangements with connecting carriers*, i.e.,
> by means of through ticketing, *or when the railroad participates in the movement
> of freight in interstate or foreign commerce.*

Fun Trains, Inc., No. FD 33472, 1998 STB LEXIS 75, at *5-6 (STB Mar. 5, 1998) (emphasis

added).  Based on this reasoning, the STB concluded that it had no jurisdiction because "[t]here

is no indication here that Fun Trains' operations will be sufficiently linked to or will be part of interstate commerce." Id. at *6. Without a connection to interstate commerce, Fun Trains' operations were not "transportation by rail carrier" under the ICCTA.

Here, OCSR has not shown that its operations are part of the interstate rail network. There is no evidence that OCSR participates in the interstate transportation of passengers under arrangements with connecting carriers or participates in the interstate movement of freight. There is also no evidence that the portion of the rail line leased by OCSR is connected to the interstate rail network. In fact, the lease between the Port and OCSR states that the Port's connection to a mainline carrier has been severed. I find that OCSR's operations do not fall under the STB's jurisdiction.

OCSR attempts to shift the focus of the inquiry to whether its repairs on tracks under the STB's jurisdiction is enough to bring its actions under the STB's jurisdiction. OCSR argues that it is an agent of the Port, and that if it were the Port performing the repairs, the State's removal-fill law would be preempted. I am not persuaded by this argument. First, there is no evidence that OCSR is an agent of the Port. The lease between the Port and OCSR does not mention the creation of an agency relationship. Wickert Decl. [10] Ex. 1. An agency relationship cannot be implied simply because OCSR is performing the repairs on behalf of the Port. The lease is a comprehensive legal document. If the parties intended to create an agency relationship, they would have done so expressly. Second, OCSR has not provided any legal authority to suggest that the focus of the inquiry should be whether the tracks themselves are under the STB's jurisdiction. The ICC decision in Magner suggests otherwise. In determining the ICC's jurisdiction, it was not relevant that the scenic railway would operate on tracks owned by three interstate freight carriers. Magner, 692 F.2d at 442-43. See also City of Creede, No. FD 34376,

2005 STB LEXIS 486, at *13-14 (STB May 3, 2005) ("[S]ection 10501(b) preemption does not apply to operations that are not part of the national rail network.").

I conclude that OCSR is not a railroad carrier that operates as part of the interstate rail network, such that it would be subject to STB's jurisdiction under § 10501(a).  With no likelihood of success on the merits, I need not address the remaining three factors.  The motion for preliminary injunction is denied.

II.      Consolidation of Hearing and Trial on Merits

Plaintiff's motion for a preliminary injunction is predicated on its first claim, that the ICCTA preempts the State's removal-fill law.  However, all of OCSR's claims rely on the Commerce Clause.  The ICCTA is based on Congress' authority under the Commerce Clause to regulate railroads.  City of Auburn v. United States, 154 F.3d 1025, 1029 (9th Cir. 1998).  And OCSR's second and third claims allege violations of the Commerce Clause.  Considering my prior finding that OCSR's operations do not relate to interstate commerce, OCSR is unlikely to prevail on the merits for its second and third claims.

Rule 65 gives me the discretion to treat a hearing for preliminary injunction as a final adjudication on the merits, so long as the procedure does not result in prejudice to either party.  Fed. R. Civ. P. 65(a)(2); Glacier Park Foundation v. Watt, 663 F.2d 882, 886 (9th Cir. 1981).  Because there is no genuine issue of material fact which remains at issue in this matter, I exercise my discretion and grant the State's motion to consolidate the hearing and the trial, so as to fully resolve this matter by ruling on the purely legal issues before me.  For the reasons discussed above, I deny OCSR's request for declaratory relief and a permanent injunction.

/ / /

/ / /

CONCLUSION

Based on the foregoing, Plaintiff's motion for preliminary injunction [8] is denied and

Defendants' motion to consolidate the hearing with a trial on the merits [18] is granted.

Plaintiff's request for declaratory and injunctive relief is denied, and this case is dismissed.

IT IS SO ORDERED.

Dated this ____ day of April, 2014.


MARCO A. HERNÁNDEZ
United States District Judge